UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.   06-78 ( RWR ) |
| v. : | |
| : | |
| ALPHONSO WALKER, JR. : | |
| Defendant. : | |

**GOVERNMENT'S MOTION TO ADMIT OTHER CRIMES**
**EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to permit the introduction of prior misconduct on the part of the defendant which is relevant to defendant's intent, knowledge, and absence of mistake, pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)").  In support of its motion, the government relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter:

**I.     The Present Case**

The defendant is charged in a five-count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for One Year or More, Unlawful Possession with Intent to Distribute Crack Cocaine, Unlawful Possession of PCP, Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, and Attempted First Degree Burglary While Armed.

At a hearing or trial in this matter, government counsel expects the evidence for this charge to demonstrate substantially as follows: On February 1, 2006, at approximately 6:50 pm, the defendant went to XXXX XXXXXXX Street, where his ex-girlfriend Keyda Young resided with her

children, and began banging on the door. XXXXXXX XXXXX (Keyda Young's 13-year-old daughter), who was home alone, opened the door, but the security gate remained closed. Alphonso Walker began rattling the gate, attempting to break into the house while yelling for Keyda Young. Throughout the encounter, the defendant had his hand inside his left coat pocket as if holding something. Brionna Young then closed the door and ran upstairs to put on slippers. As she was upstairs, the defendant continued to try to break into the house, while screaming for Keyda Young. Brionna Young put on slippers, grabbed a cordless phone, and ran out of the house, towards a school a block away where her mother was attending a meeting. As she ran, she called 911 and reported the incident.

     Officers of the Metropolitan Police Department responded to the XXXX block of XXXXXXX Street, XX, Washington, DC. Upon entering the block, the officers observed the defendant walking away from XXXX XXXXXXX Street, XXX. The officers approached the defendant and asked him if everything was okay. They further asked him if he had just left XXXX XXXXXXX Street. The defendant responded "A murder, huh, what, a Burglary?" The officers asked the defendant if he knew anyone who lived at XXXX XXXXXXX Street. The defendant replied "no," and then turned and ran up XXXXXXX Street, away from the officers. A brief chase ensued and the defendant was stopped in the XXXX Block of XXXXXXXXX Place, XX. The defendant was patted down for officer safety, and the officers recovered a gun from the defendant's left coat pocket. In a search incident to arrest, the police also recovered 25 small green ziplocks of crack cocaine, a small vial of PCP and $1,046.25.

In this case, the government seeks to introduce evidence of defendant's prior distributions of crack cocaine and prior instances of assault under Federal Rule of Evidence 404(b), for the purpose of proving intent, knowledge, and absence of mistake.

## II.   Legal Standard

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. See United States v. Bowie, 232 F.3d 923, 926, 930 (D.C. Cir. 2000). Importantly, this rule is one of "inclusion rather than exclusion." Id. at 929. As the Court of Appeals has noted en banc, while the first sentence of the rule is framed restrictively, the rule is actually quite permissive, prohibiting the admission of other crimes evidence in but one circumstance – for the purpose of proving that a person's actions conformed to his character. United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998). In short, Rule 404(b) bars "not evidence as such, but a theory of admissibility." Id. at 1202. As the Court stated in United States v. Cassell, 292 F.3d 788, 791 (D.C. Cir. 2002)(citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original), "[t]rue, the evidence may tend to show that [defendant] is a person of bad character, but Rule 404(b) does not thereby render it inadmissible. To reiterate what we have stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.'"

Such evidence is of course subject like all evidence to the strictures of Rule 403. Thus, the admissibility of other crimes evidence rests on a two-step inquiry: 1) whether the other crimes evidence is relevant to an issue other than the defendant's character or propensity, and if so, 2)

whether the evidence is admissible under Rule 403 because its probative value is not substantially outweighed by the danger of unfair prejudice. United States v. Moore, 732 F.2d 983, 987 (D.C. Cir. 1984).

As its language reflects, Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases" -- even when other crimes evidence is involved. Moore, 732 F.2d at 989. See Huddleston v. United States, 485 U.S. 681, 688-89 (1988) ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence").[1]

### III. Other Crimes Evidence

#### A. Prior Distributions and Drug Possessions

On September 11, 2000, a cooperating witness walked to XXXX XX$^{Xh}$ Place, X.X. to purchase crack cocaine. Once at that location, the witness met with an individual inside that individual's apartment, and they discussed the purchase of crack cocaine. The witness indicated that it wanted to buy $200 worth of crack cocaine. The defendant then knocked on the door of the apartment, and the witness answered the door. In an audio-taped conversation, the defendant identified himself, and then went into the back bedroom for a brief minute with the other individual.

---

[1] As for the burden that must be met in presenting other crimes evidence, the Court is not required to make any sort of preliminary finding or to weigh the evidence as to the other crimes. Indeed, as the Supreme Court has emphasized, "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." Huddleston, 485 U.S. t 690 (emphasis added). Instead, the trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [other crimes evidence] . . . by a preponderance of the evidence." Id. at 690. And in doing so, the trial court must consider all the pieces of evidence presented to the jury, both as to the other crimes evidence and the charged conduct. Ibid.

That individual came out, handed the witness 12 clear ziplocks of a white rock-like substance, and then stated that the defendant did not have enough crack and needed to go get more. The defendant left the apartment and returned a short time later, at which time he met with the other individual in the hallway. That individual then gave the witness loose white rocks, in exchange for $200. The loose white rocks and content of the 12 ziplocks were analyzed and determined to be a total of .9 grams of cocaine base.

On May 29, 2001, a cooperating witness walked to the area of XXXX XX$^{th}$ Place to purchase crack cocaine. While waiting in the area, the defendant met with another individual and discussed the purchase of crack cocaine. The witness stated that it wanted $500 worth of crack cocaine. The individual advised the witness that he had only $100 worth of crack cocaine. That individual sold the witness four ziplocks of crack cocaine in exchange for $100, and then called over the defendant to complete the sale. In an audio-taped conversation, the defendant asked the witness to come with him to get the crack cocaine. The defendant stated that he had "blocks" of coke for the witness. The witness got into the defendant's van, and the defendant drove to Capital Crossing Apartments in Suitland, Maryland. The defendant got out of the car and went into a building. When he returned to the car, the defendant gave the witness one large ziplock containing a white rock-like substance, in exchange for $500. The defendant then drove the complaining witness back to Congress Park. The rock-like substance was analyzed and determined to be 1.9 grams of cocaine base.

On June 19, 2001, a cooperating witness walked to the area of XXXXXXXX Street, XX and XX$^{th}$ Place, XX. In an audio-taped conversation, the witness met with the defendant and asked him about the purchase of crack. The defendant asked the witness to come with him to get the crack cocaine. The defendant stated that he had "blocks" of coke for the witness. The witness got into

the defendant's Chevy Suburban, and the defendant drove to Capital Crossing Apartments in Suitland, Maryland. The defendant got out of the car and ran into a building. After a brief time, he returned to the car, and gave the witness one large ziplock containing a white rock-like substance, in exchange for $500. The defendant then drove the complaining witness back to Congress Park. The rock-like substance was analyzed and determined to be 3.1 grams of cocaine base.

Furthermore, the defendant was arrested on at least three different occasions, which are discussed in more detail in the following section. During each of these arrests, police officers conducted a search incident to arrest and recovered from the defendant quantities of marijuana that are consistent with distribution.

As the Court of Appeals noted in Cassell, "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.'" Id. at 793 (citation omitted). In the instant case, among other things, the government must prove that the defendant possessed the crack cocaine recovered from his pocket with the intent to distribute it. The "other crimes" evidence of defendant's previous possession of another illegal substance, marijuana, with the intent to distribute it, and the defendant's prior distributions of crack cocaine, the very substance he is charged with in the instant case, is highly probative of the defendant's knowing and intentional possession of the crack cocaine with intent to distribute it in this case. It also shows that the defendant's possession of the crack was not the result of mistake or accident. As the Court of Appeals observed en banc, "[a] defendant's hands-on experience in the drug trade cannot alone prove that he possessed drugs on any given occasion. But it can show that he knew how to get drugs, what they looked like, where to sell them, and so forth.

Evidence of a defendant's experience in dealing drugs -- evidence, that is, of his 'bad acts' -- thus may be a 'brick' in the 'wall' of evidence needed to prove possession." Crowder, 141 F.3d at 1209, n.5 (en banc).

Because of the highly probative nature of such Rule 404(b) evidence in the context of drug cases, the courts have generally not hesitated to admit such evidence for the purposes sought here. See, e.g., United States v. Burch, 156 F.3d 1315, 1323-24 (D.C. Cir. 1998) (evidence of defendant's prior arrest and conviction for PWID crack cocaine was properly admitted under Rule 404(b) to show defendant's knowledge and intent in prosecution for possession with intent to distribute crack cocaine); Crowder, 141 F.3d at 1208-09 (noting that defendant's subsequent purchase of cocaine was permissible under Rule 404(b) for multiple purposes, including motive, intent, possession, and knowledge) (en banc); United States v. Johnson, 40 F.3d 436, 441 n.3 (D.C. Cir. 1994) (prior drug transaction properly admitted under Rule 404(b)). The significant probative value of the evidence here is clearly not outweighed by the danger of unfair prejudice in this case. Whatever prejudice the defendant may perceive, moreover, can adequately be addressed through the use of a limiting instruction to the jury.

      **B.**    **Prior Assaults**

On March 4, 2003, officers of the Metropolitan Police Department were driving in the XXXX block of XXXXXXXXAvenue, XXXXXXXXX, when they observed the defendant punch Keyda Young several times in her head and face. The officers stopped the car, and placed the defendant under arrest. A search incident to arrest revealed one medium plastic bag containing twenty-six smaller yellow ziplocks of a green weed substance and $665. The weed-like substance was sent to the DEA for analysis and determined to be 28.8 grams of marijuana.

Approximately two years ago, Ms. Young was visiting with her family in their apartment on XXXXXX XXXXX XXXX XXXXXXXXX, XXXXXXXXX, Washington, D.C., when the defendant came to get her. The defendant made Ms. Young leave the building, struck her numerous times, and pulled out a gun and pointed it at her. The defendant stated that he would kill her if she went back to her family. Approximately six months after this incident, the defendant and Ms. Young got into an argument about her going to Ruby Tuesday's restaurant with friends. Again, the defendant pulled out a gun and pointed it at Ms. Young. The defendant stated that he would kill Ms. Young if she did not let him know where she was or what she was doing.

On October 12, 2005, at approximately 4:00 a.m, Keyda Young was sleeping upstairs in her home at XXXXX XXXXXXX Street, XX, when she was awoken by a loud noise coming from the first floor. Ms. Young heard the defendant, whom she had known for eight years, yelling from the first floor of her home that he was going to "get" her. The defendant then ran upstairs and continued to yell at Ms. Young. Ms. Young picked up the phone and attempted to call her mother for help. The defendant grabbed the phone away from her and threw it at the wall. He then picked up the phone and raised it over his head. Ms. Young screamed and the defendant ran away. Upon going downstairs, Ms. Young observed that the back door had been kicked open.

On the night of October 21, 2005, the defendant called Ms. Young and stated that he was on his way over to kill her. Ms. Young left her house for the night. Upon returning the next morning, she observed that her door had been kicked open. Ms.Young had a message on her cellular phone from the defendant stating he had broken down her door. The police responded to XXXX XXXXXXX Street to take the report, and, while on scene, the defendant appeared. He was arrested,

and in a search incident to arrest, police recovered one clear ziplock bag containing 13 small zips of marijuana and $500.86 from the defendant.

In November of 2005, defendant ran into XXXX XXXXXXX Street early in the morning as Ms. Young and her children were leaving the house. The defendant yelled that he was looking for his his gun, and he then began yelling at Ms. Young and choking and hitting her. Brionna Young jumped on top of the defendant, ripping the defendant's jacket. The defendant then left.

In the instant case, the defendant is charged with attempting to enter XXXX XXXXXXX Street, SE, with the specific intent to assault Ms. Keyda Young. To prove the charged offense, the government must provide evidence of the defendant's intent to assault Ms. Young. Thus, evidence of the defendant's threatening and menacing conduct toward Keyda Young, and her family generally, is intrinsic to the charged crime. See United States v. Badru, 97 F.3d 1471, 1474-75 (D.C.Cir. 1996) ("Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or if necessary to complete the story of the crime of trial . . . ."); but see United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000) (finding that, although in limited circumstances evidence can be "intrinsic to" the charged crime and, therefore, not fall under the auspices of Rule 404(b), there is no general "complete the story" or "explain the circumstances" exception to the Rule.) All of these acts involve Keyda Young, the alleged intended victim in this case, and all occurred in the last three years. In fact, three of the acts occurred within four months of the charged conduct and at the exact same location. These acts are direct evidence of the defendant's plan on February 1, 2005 to break into Ms. Young's home at 1222 Talbert Street and to assault Ms. Young. See Wilson v. United States,

690 A.2d 468, 469 (D.C. 1997) (holding that a threat to the victim to do the act charged does not constitute other crimes evidence, but rather an admission directly relevant to guilt.)

Even assuming arguendo that the prior assaults on Ms. Young are not intrinsic to the charged crime, they are clearly admissible as extrinsic evidence under Rule 404(b) as evidence of the defendant's motive, intent and plan when he went to XXXX XXXXXXX Street on February 1, 2006. See Bowie, 232 F.3d at 926, 930 ("Intent and knowledge are . . . well-established non-propensity purposes for admitting evidence of prior crimes or acts."). The prior assaults and the charged conduct are "part of a pattern of abuse involving the same victim and similar *modus operandi.*" See United States v. Hinton, 31 F.3d 817823 (9th Cir. 1994) (evidence of defendant's four previous assaults on his wife admissible under Rule 404(b) as evidence of defendant's intent); see also United States v. Mitchell, 629 A.2d 10, 13-14 (D.C. 1993) ("Where one spouse or partner in a relationship commits a crime against the other, any fact or circumstance relating to ill-feeling; ill-treatment; jealousy; prior assaults; personal violence; threats, or any similar conduct or attitude . . . [is] relevant to show motive and malice in such crimes." The significant probative value of the evidence here is clearly not outweighed by the danger of unfair prejudice in this case. Furthermore, whatever prejudice the defendant may perceive can adequately be addressed through the use of a limiting instruction to the jury.

WHEREFORE, for the reasons stated above, the United States respectfully submits that the government's motion to admit other crimes evidence be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
ANN H. PETALAS
Assistant United States Attorney
TX Bar No. 24012852
555 Fourth Street, N.W.
Room 4211
Washington, DC  20530
(202) 307-0476

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of the foregoing United States' Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b) and the attached proposed order to be served by facsimile transmission and mail upon the attorney for the defendant, Rita Bosworth, Esq., Assistant Federal Public Defender, 625 Indiana Ave., N.W., Washington, D.C.  20004 [(202) 208-7500; fax: 208-7515], on April 19, 2006.

_____
ASSISTANT UNITED STATES ATTORNEY