## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     :
                         :     Criminal No.     06-78 ( RWR )
                         :
         v.                    :
                         :
                         :
ALPHONSO WALKER, JR.        :
                         :
         Defendant.       :

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of

Columbia, respectfully submits this opposition to defendant's Motion to Suppress Physical Evidence

and Statements. In support of this opposition, the United States relies on the following points and

authorities and such other points and authorities as may be cited at a hearing regarding these motions.

**I.     Factual Background**

           The defendant is charged in a five-count indictment with Unlawful Possession of a

Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for One Year

or More, Unlawful Possession with Intent to Distribute Crack Cocaine, Unlawful Possession of

PCP, Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, and Attempted

First Degree Burglary While Armed.

           At a hearing or trial in this matter, government counsel expects the evidence to demonstrate

substantially as follows: On February 1, 2006, at approximately 6:50 pm, the defendant went to

XXXXX XXXXXXX Street, XX, where his ex-girlfriend Keyda Young resided with her children,

and began banging on the door. Brionna Young (Keyda Young's 13-year-old daughter), who was

home alone, opened the door, but the security gate remained closed.  The defendant began rattling the gate, attempting to break into the house while yelling for Keyda Young.  Throughout the encounter, the defendant had his hand inside his left coat pocket as if holding something.  Brionna Young then closed the door and ran upstairs to put on slippers.  As she was upstairs, the defendant continued to try to break into the house, while screaming for Keyda Young.  Brionna Young put on slippers, grabbed a cordless phone, and ran out of the house, towards a school a block away where her mother was attending a meeting.  As she ran, she called 911 and reported that her stepfather was trying to break into her home.  Brionna Young further started to indicate that the defendant was in possession of something, but the phone line was disconnected, and the dispatcher was unable to ascertain any further information.

Sergeants Trainor and Roberts of the Metropolitan Police Department received a call for a "Burglary One in progress" at XXXX XXXXXXX Street, XX.  They were further advised to use caution.  Upon entering the XXXX block of XXXXXXX Street, XX,  the officers observed the defendant walking away from XXXX XXXXXXX Street.  The officers approached the defendant and asked him if everything was okay.  They further asked him if he had just left XXXX XXXXXXX Street.  The defendant responded "A murder, huh, what, a Burglary?"  The officers asked the defendant if he knew anyone who lived at XXXX XXXXXXX Street.  The defendant replied "no," and then turned and ran up Talbert Street, away from the officers.  Sergeant Trainor observed the defendant reaching towards his waistband area as he ran away.  A brief chase ensued and the defendant was stopped in the XXXX Block of XXXXXXXXX XXXXX, XX.  The defendant was patted down for officer safety, and the officers recovered a gun from the defendant's left coat pocket.  In a search incident to arrest, the police also recovered 25 small green ziplocks of

crack cocaine, a small vial of PCP and $1,046.25.  The defendant was subsequently read his <u>Miranda</u>

rights, but did not make any further statements.

## II.     <u>The Officers Had Reasonable, Articulable Suspicion to Stop and Frisk the Defendant.</u>

<u>Terry v. Ohio</u>, 392 U.S. 1 (1968) permits police officers to temporarily "seize" a person under

certain circumstances, namely in brief encounters between a citizen and the police on public streets,

which require swift action because of observations the officer has made.  <u>Id.</u> at 20.  The officer may

briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal

activity may be afoot."  <u>Id.</u> at 30.  The officer need not be certain that the citizen is engaged in

criminal activity; reasonable suspicion "is a less demanding standard than probable cause and

requires a showing considerably less than preponderance of the evidence." <u>Illinois v. Wardlow</u>, 528

U.S. 119, 123 (2000).  Thus, a <u>Terry</u> stop may be conducted simply "on the need to 'check out' a

reasonable suspicion." <u>United States v. Clark</u>, 24 F.3d 299, 303 (D.C. Cir. 1994).  Furthermore, a

stop under <u>Terry</u> has occurred when either an officer physically lays a hand on an individual, or

where the officer asserts his authority and the individual submits to that show of authority.

<u>California v. Hodari D.</u>, 499 U.S. 621, 627 (1991).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed

in a particular situation is determined by the totality of the circumstances.  Courts may not scrutinize

each possible factor upon which the officer relied on in a separate and distinct manner.  <u>United States</u>

<u>v. Sokolow</u>, 490 U.S. 1, 8-9 (1989).  "An officer on the beat does not encounter discrete,

hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently

probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors

– especially when viewed through the eyes of an experienced officer – may." <u>United States v.</u> <u>Edmonds</u>, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

In the instant situation, Sergeants Trainor and Roberts had reasonable articulable suspicion to conduct a <u>Terry</u> stop of the defendant based on their observations. The officers were responding to a call for a burglary in progress at the location from which the observed the defendant leaving. The officers had a duty to investigate and to determine whether or not anyone was injured or in danger. When they asked the defendant if everything was okay, he responded by stating "A murder, huh, what a burglary/" Officers then asked him if he knew anyone at the location of the burglary call, at which point the defendant began to flee. As the defendant was running, he grabbed at his left front waist area.

The Supreme Court has held that flight from the police goes a very long way to establishing reasonable articulable suspicion for a <u>Terry</u> stop. In <u>Illinois v. Wardlow</u>, the Court found reasonable articulable suspicion where the defendant was present in a high narcotics-trafficking area, and he fled from the police. 528 U.S. 119, 124-25 (2000) ("it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police."). Based on those two factors alone, the Court found that reasonable articulable suspicion had been established for a <u>Terry</u> stop.

In the instant case, the officers had even greater substantiation that "criminal activity was afoot," justifying a <u>Terry</u> stop. They were responding to a 911 call reporting a violent crime in progress at that location. When asked if everything was okay, the defendant not only fled the police, but grabbed at his waistband as he did so. Based on these actions, the officers had reason to suspect that the defendant was in the process of committing an armed burglary. Thus, in light of the totality

4

of the circumstances, viewed through the eyes of an experienced officer, the officers had a reasonable articulable suspicion to stop the defendant.  The officers also had a basis to conduct a <u>Terry</u> frisk on the defendant at this time.  To be able to conduct a <u>Terry</u> frisk, the officers must be able to articulate facts that suggest the person stopped "may be armed and presently dangerous." <u>Terry</u>, 392 U.S. at 30.  The fact that the defendant was seen fleeing the scene where a violent crime had been reported moments earlier, that the defendant had mentioned murder and burglary, and that the defendant made a furtive gesture towards his waistband as he ran, certainly provided the officers with a basis to conduct a <u>Terry</u> frisk for officer safety.  Once that frisk was conducted the officers felt  a weapon in the very location they observed the defendant make a furtive gesture.  The defendant was then placed under arrest.  In a search incident to arrest, the police further recovered 25 zips of crack cocaine, a small vial of PCP and $1,046.25.  See <u>Chimel v. California</u>, 395 U.S. 752, 763 (1969) (holding that if the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest).

Furthermore, the search of the defendant and discovery of the weapon is further supported by the inevitable discovery doctrine to the exclusionary rule.  In <u>Nix v. Williams</u>, 467 U.S. 431, 443 (1984), the Supreme Court held that if the government can demonstrate, by a preponderance of the evidence, that the evidence would have been inevitably discovered by some lawful means, the evidence should be received.  In the instant case, even should the court find that the search of the defendant's person was in violation of the Fourth Amendment, the government can still demonstrate, by a preponderance of evidence, that the gun found on defendant would have been inevitably discovered by some lawful means.  In this case, Brionna and Keyda Young identified the defendant as the person who was attempting to break into XXXX XXXXXXX Street, thus supporting the

probable cause for the arrest of the defendant for attempted first degree burglary.  Consequently, the defendant would have been searched at that point, in a search incident to his arrest.  One obvious point remains:  had the officers <u>not</u> patted the defendant down at the time they had, and instead waited to track down and interview Brionna Young, they would have placed themselves and others in an extremely dangerous situation.

### III.     <u>Defendant's Statements are Admissible Against Him.</u>

Defendant argues that the statements he made to the police were extracted from him in violation of his Fourth and Fifth Amendment rights.  At the outset, defendant's motion to suppress statements is insufficient to warrant a hearing on the matter.  As the Court of Appeals has noted, "while a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of the defendant's objections."  <u>United States v. Bailey</u>, 675 F.2d 1292, 1294 (D.C.Cir. 1982); <u>see also</u> <u>United States v. Mitchell</u>, 951 F.2d 1291, 1296 (D.D.C. 1991).  Defendant simply states that "[a]ll statements made by Mr. Walker on January 6, 2006, must be suppressed because they were involuntary and made in violation of <u>Miranda.</u>" <u>Defendant's Motion to Suppress Evidence</u> at 3.  Defendant does not specify what "custodial" statements it is moving to suppress.  As such, defendant fails to allege any facts that, if proved, would require the grant of relief.  <u>See</u> 3 Charles Alan Wright, Nancy J. King, and Susan R. Klein, <u>Federal Practice and Procedure</u>, § 675 (3d ed. 2004); <u>see also</u> <u>United States v. Duddles</u>, 399 A.2d 59, 63 (D.C. 1979).   Thus, an evidentiary hearing is not required regarding the defendant's statements.

In any event, defendant's statements at the scene were made prior to being placed into custody.  The strictures of <u>Miranda</u> apply only to those statements which are the product of a

custodial interrogation.  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  For purposes of <u>Miranda</u>, a suspect is in custody only if "the individual's freedom of movement is curtailed to the 'degree associated with formal arrest.'"  <u>Patton v. United States</u>, 633 A.2d 800, 815-16 (D.C. 1993) (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks omitted)).  A suspect in such a situation must be informed of his right to refuse to answer any statements; the failure to do so will lead to the suppression of any statements that suspect makes.  <u>Dickerson v. United States</u>, 530 U.S. 428 (2000).

Defendant's statements were made to the police prior to the defendant's being placed into custody.  Investigative questioning during a temporary (<u>Terry</u>) detention prior to an arrest need not be preceded by <u>Miranda</u> warnings.  <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420 (1984).  In fact, that is the very purpose of a <u>Terry</u> stop, for if the officers could briefly detain an individual without being permitted to question him, the crux of <u>Terry</u> would be undermined.  In addition, even if the officer <u>intended</u> to arrest the defendant, or had probable cause to do so, that has no bearing on whether the defendant was in custody at the time, for <u>Miranda</u> purposes.  <u>Id.</u>; <u>see also</u> <u>United States v. Gale</u>, 952 F.2d 1412, 141516 (D.C. Cir. 1992) (officers had conducted only <u>Terry</u> investigatory stop when they blocked defendant's vehicle, and questioned him about whether he had drugs).  Thus, the defendant's <u>Miranda</u> rights were not triggered until well after he made any statements to the police.

Defendant asserts further that his statements were involuntary; thus, the government must establish by preponderance of the evidence that the statements were voluntary.  <u>See</u> <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972).  To determine whether a statement was voluntarily made, this Court must examine the totality of the circumstances to determine whether the defendant's "will has been overborne and his capacity for self-determination critically impaired."  See  <u>Schneckloth v.</u>

Bustamonte, 412 U.S. 218, 225 (1973); Colorado v. Connelly, 479 U.S. 157, 167 (1986). "Without a showing of coercive police activity . . . there is not a basis for concluding that [a defendant's] confession was involuntary . . . ."   Martin v. United States, 567 A.2d 896, 908 (D.C. 1989).   The defendant identifies no coercive police activity, and the circumstances of defendant's statement do not suggest that it was the product of coercive police activity, or was in any other way involuntary. A Terry stop is not per se coercive police activity, and thus further facts must be established to demonstrate such activity.   These facts do not exist in this case, because there was no coercive police activity or any other circumstances that demonstrate that defendant's will was overborne. In fact, the defendant's immediate subsequent action of fleeing from the police demonstrates that there was no coercive police action controlling the defendant.[1]

---

[1]In cases with much starker circumstances than those in this case, the courts have found statements to be voluntary.  See, e.g., Bliss v. United States, 445 A.2d 625, 631-32 (D.C. 1982) (defendant was in pain from gunshot wound, had little food or sleep, but it was a flesh wound, there was little blood, and he was able to answer questions), cert. denied, 459 U.S. 1117 (1983); Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.) (confession voluntary even though defendant had forearm in cast and was handcuffed during six-hour interrogation), cert. denied, 493 U.S. 1011 (1989); United States v. Leon Guerrero, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated to prosecutors insufficient to overcome will); United States v. Yunis, 273 U.S. App. D.C. 290, 298, 859 F.2d 953, 961 (1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that agent would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary), cert. denied, 486 U.S. 1010 (1988).

## V.     Conclusion

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

_____

ANN H. PETALAS
ASSISTANT UNITED STATES ATTORNEY
TX Bar No. 24012852
U.S. Attorney's Office
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room 4211
Washington, DC 20530
(202) 307-0476    FAX:  (202) 616-2296

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was caused to be served by mail on counsel for the defendant, Tony Miles, Esquire, Assistant Federal Public Defender, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C.  20004, this 1st day of May 2006.

_____

Ann H. Petalas
Assistant United States Attorney

9